Good morning, Your Honor, and may it please the Court. Your Honor, this case involves really two parts in terms of the appeal that we have made. The one part of it is the evidence that was introduced that we think was improperly introduced. The second part is the ineffective assistance counsel claim that arises from the circumstances in this case. This case actually has been to the Seventh Circuit before, and at that time it was sent down on a limited remand, which in the government's response, they say, was at their request. They say that the remand for it to go back in front of the district court was for the purpose of developing a record, essentially, of whether or not the ineffective assistance of counsel had occurred. What happened when it came back to the district court, however, was that counsel, the complaint of counsel, the ineffective, allegedly ineffective assistance of counsel, was removed from the case. They withdrew. At the time that they withdrew, it appears from the record that the district court then assumed that the ineffective assistance of counsel had been cured. It's our position that the remand was to determine whether those attorneys could remain on the appeal, and that required further proceedings in the district court to determine whether there was an actual conflict because of the investigation, the criminal investigation of counsel, and once counsel withdrew, that eliminated the need for any further proceedings, and so new counsel was appointed and the appeal got back on track. That is correct, but it's at that time when there could have been a record developed that it merely having, and this is from the government's in their reply to our appeal, that it's at that point that essentially it is cured that the ineffective assistance of counsel argument has been cured by the removal of trial counsel at that point. While it's certainly true that it gets the appeal back on track, it also fails, however, to cure the ineffective assistance of counsel claim that's made in our appeal, and that Mr. Lewisby was subjected to in this case. I'm not following. The removal of counsel took care of the ineffective assistance of counsel, the conflict problem with respect to the ongoing criminal investigation of Bo Brindley. He was removed, new counsel was appointed, the appeal proceeded. You still have an argument that there was a ineffective assistance of counsel during the trial and sentencing because he was not conflict free at that time, but you've got to show either an actual conflict or if there's only a potential for conflict that the potential for conflict actually causes some prejudice. The Blake case gives those as two analytical frameworks, and the first one being actual conflict. It's our position that Mr. Brindley and Mr. Thompson operated under an actual conflict at that time. The time range that the indictment that is handed down by the government in this case alleges that there were illegal activities going on throughout the time period when Mr. Lewisby had this representation. The time period in that complaint goes throughout the representation during trial, during sentencing, and all of those parts. So the the conflict would arise by virtue of the government investigating counsel and So there can't have been an actual conflict. It's really a potential conflict by virtue of the ongoing investigation, and that requires you to prove some prejudice. The actual conflict is the allegedly criminal activity that's involved. Knowing the date the indictment comes down does not erase any criminal conduct that could have been going on throughout the indictment. Additionally, the idea of the investigation, that period of time, the point at which a target knows about the investigation or has been informed by the government of that they're the target of the investigation. But the conflict arises because counsel would do something to protect himself from the indictment against him. In other words, would be inclined to side with the his own skin rather than zealously represent the interests of his clients against the prosecutor in the case. The fact that counsel was engaged in collateral criminal conduct isn't what creates a conflict. Except that when we have things like ethics rules for lawyers, all of those are done for the purpose of assuring that counsel is competent, that they're ethical, that is the thing that is required for their client. The conflict issue can arise merely from illegal conduct going on at the time, at least in the perception of the government. It's not whether or not Mr. Brindley perceives it, but in the perception of the government. That is going on according to the government throughout the period of time when he represented Mr. Lewis. How does that create a conflict of interest on the attorney's part, the defense attorney's defense attorney doesn't know of the ongoing investigation. How are his interests put in conflict with his clients? Whether or not he knows that there is an ongoing investigation is something that hasn't been established by the record. The fact that he's involved in the illegal conduct is what creates a conflict. If it hasn't been established by the record, why did you bring this That's specifically to what Mr. Brindley knew at the time is my answer to the question. Whether or not that conflict existed, whether or not there had been illegal conduct that was charged by the government, is clearly established by the record from the indictment saying that the charge period and the illegal conduct went throughout the representation of Mr. Lewis Bee. I'm going to save the rest of your time. Yes, your honor. Good morning. May it please the court, Bethany Biesenthal for the United States. There is nothing at all in the record to indicate that there was either an actual or resulting from the subsequent indictment of trial counsel by the United States Attorney's Office. That indictment came some 11 months after the defendant was represented at trial and three months after he was sentenced. In any event, even assuming the existence of either an actual or potential conflict at the time of the defendant's representation at trial, the defendant has not even alleged that trial counsel's performance was adversely affected by any such conflict or that there was any prejudice resulting there from. Just one clarification point, the defense counsel stated that the government requested a limited remand by this court for the appellate case to be remanded to the district court to explore the possibility of whether there was a potential conflict as a result of Mr. Brinley and Mr. Thompson being notified that they were targets of a federal investigation. That limited remand had nothing to do with whether there was an ineffective assistance claim at the time of the trial or the sentencing, but was merely a request by the government to ensure that there was no potential conflict by the defendant's representation by Mr. Brinley moving forward in the appeal. And if there are no further questions from the panel, the government respectfully requests that this court affirm the defendant's conviction. There has been a discussion of the of the expert witness, which is one of one of Mr. Hulive's points, that this expert witness who testified about the cell towers wasn't really qualified to be an expert witness. Yes, Your Honor, it's the government's position that the district court rightfully admitted the expert because that testimony satisfied each of the prongs under Rule 702. That testimony assisted the trier of fact. It was specialized knowledge that required information pertaining to cell towers and principles about the signals that are emitted from cell towers and what that means as far as what a phone record can tell about the location, general location, of a particular phone at the Was he, did he have experience in this? Had he been, had he testified in previous trials? He had testified 17 times previously before the Lewis, before the defendant's trial in this case. He had been qualified as an expert 17 times both in state and federal trials. He also testified at court and we presented to the district court prior to the admission of his testimony the facts that he had received over 350 hours of training from the cell site providers themselves. So from the major companies he had received that extensive training. In addition to that, as a federal agent who, Agent Rasky testified that he's in the violent crimes unit within the FBI, he's used that particular expertise, cell site location data, hundreds of times to locate fugitives, kidnap victims, and other individuals during the course of investigations. And so that gave his testimony that did show reliability as far as him having actually used it successfully. Okay, well thank you very much Ms. Biesenthal. Thank you. So Mr. Neulab, how much time does he have? Three minutes? Thank you again. In response to what the government has put forward before your prejudice prong of it, as I think we discussed earlier, is something that if you look at the line of cases from Holloway versus Alabama, they say that they're not going to go into the niceties of deciding the amount of prejudice. They're not going to try to weigh out the prejudice from that. And I think that that means that if there's a finding that there is an actual conflict, the performance and prejudice, one doesn't go through the record and look for instances where performance could have been different. And I think that we've made that clear in our brief. But how could it have been, I don't know, how could Brindley have done better? That's exactly the analysis that that Holloway line says that you don't have to go into. If there's the actual conflict, then combing the record for places where one might have done something differently is not within the purview of the appeal. If I may speak to the expert testimony that the court inquired about, there are a couple of problems with the government's analysis of it. One is that saying that there have been 350 hours of being trained by the people that work for the companies. There's not a T-Mobile or an AT&T commercial out there that says the great thing about our company is we know where your phone is. They talk about service, they talk about price, the engineers that work there are concerned with call quality. The location of a phone is a different matter and nothing indicates that those engineers work on locating people's phones, which is what this expert was qualified to speak to. Additionally, this is a Daubert case and to say that hundreds of times a person has been found, either a kidnapped victim or a suspect has been found, does not go to the level of science that's required by those Daubert standards. Saying that we've successfully found... I don't understand that. You don't have to have science to be an expert witness. You don't, but you have to have the reliability that comes from that. Well, if he's been allowed to be an expert witness in countless cases and he received all his training and so on, why isn't he qualified? Being able to find somebody doesn't say in those other cases whether or not there was a good address, whether there was a great description of the person, whether there was a habit of the target that they were looking for being in particular places. All of those would give you the reliability would say whether or not the factor that caused them to be able to find... He was deposed, wasn't he? He was deposed? Was he deposed? No, Your Honor. And so what you have then is you have successful results that aren't necessarily... You could have deposed him, though, can't you? We were not trial counsel. I suppose it could have happened, but it did not. About the first case, about Brindley, is there no room for harmless error in a lawyer who had a potential conflict? Potential conflict, the cases that say that there is no harmless error analysis say that when the conflict has been found there is in fact no harmless error analysis and we point to that specifically. Does that make any sense or is that just some dubious legal rule? I don't think so. I think it goes to the importance of the Sixth Amendment and a person's right to have... I don't understand. If it's harmless... I mean, Brindley was his successful lawyer. If there's no indication that anyone could have done better, why would you want to have another trial? The analysis says that for the... What's the sense of it? I'm not going to second-guess the Supreme Court precedent that we cite there. Okay, it makes no sense. You're just arguing authority. What's odd about it is also that there are plenty of bad lawyers. Brindley, I think, maybe he's committed illegal acts, but he's a good lawyer. And his substitute, if he had another trial, might be an inferior lawyer. I suppose that that is a risk in terms of skill level, but the conflict issue... Okay, you put purity above skill. I would not want... There must be no taint. I don't think it's acceptable to have somebody as skillful as they may be as Mephistoph and Louisa may be. What if he'd been disciplined before? Does that mean he couldn't handle any criminal cases because they'd all... every conviction would be reversed for a new trial? As an absolute bar, absolutely not. Why not? Why wouldn't that be a terrible cloud? Someone who had been disciplined, couldn't trust him anymore, right? It might be a reputational cloud if it's known to the client, then the inquiry, the colloquy, which is often had with clients when there's an allegation against their counsel, do you want to continue with this person knowing that there's an allegation against them? And in this case, there was for a contempt citation out of the Central District of Illinois at the time.  So the defendant could have waived if Brindley had been under indictment already, the defendant could waive that? Yes. Okay, well, thank you very much, Mr. Levy. You were appointed, were you not? No. Oh, okay. We were told you were, but that's fine. So anyway, thank you and thank Ms. Mephistoph for your efforts to enlighten us. So the next...